ROMOLO IMPERIALI vs. GAETON PICA & another.

Suffolk.    October 9, 1958. — February 4, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN,
WHITTEMORE, & CUTTER, JJ.

*Insurance,* Motor vehicle liability insurance.    *Evidence,* Relevancy and
materiality.

A material breach by the insured of a coöperation clause in a policy of
noncompulsory motor vehicle liability insurance entitles the insurer to
terminate its liability under the policy even though it does not show
that it was prejudiced by the breach. [498]

The insurer in a policy of noncompulsory motor vehicle liability insurance
cannot be relieved of liability thereunder because of an alleged breach
of a coöperation clause by the insured unless it has itself exercised
diligence and good faith to secure his coöperation. [498–499]

A conclusion that there was a material breach by the insured of a co-
operation clause in a policy of noncompulsory motor vehicle liability
insurance was warranted where it appeared that the insurer's attorney
representing the insured in an action of tort against him for injuries
covered by the policy received a notice of a demand to admit facts
under G. L. c. 231, § 69, which must be answered within ten days,
and on the day of its receipt wrote a letter to the insured notifying him
that the matter of answers to the demand must be attended to within
ten days and urging him to "contact" the attorney promptly, that the
letter was not mailed but was delivered in person to the insured at his
residence about fifteen miles from the attorney's office on Wednesday
six days after it was written, that the insured then stated he would get
"in touch right away," but did not do so, and that about a month later
the attorney withdrew his appearance in the action without any further
communication between him and the insured and without the attorney's
having prepared any answers to the demand or sought an extension of
time for answers. [500]

On the issue whether the insured under a policy of noncompulsory motor
vehicle liability insurance committed a material breach of a coöperation
clause in the policy through failure to coöperate with respect to answer-
ing a demand to admit facts in an action of tort against him for injuries
covered by the policy, which alleged failure was the sole ground of the
insurer's subsequent denial of liability under the policy, evidence that
the insured had coöperated with the insurer in every particular previous
to the demand was irrelevant. [500]

A breach of a coöperation clause in a policy of noncompulsory motor
vehicle liability insurance by the insured through failure to coöperate
with respect to answering a demand to admit facts in an action of tort

against him for injuries covered by the policy was not rendered immaterial by the circumstances that the facts set forth in the demand, which was never answered, were true and would have had to be admitted by the insured had the demand been answered, that the insurer knew this through a report and a statement furnished to it by him, and that the only consequence of the failure to answer the demand was that such facts were admitted: the insurer was entitled to have the insured's verification of such facts under oath at the time of the demand. [501]

BILL IN EQUITY, filed in the Superior Court on January 4, 1954.

The suit was heard by *Warner,* J.

The case was argued in October, 1958, before *Wilkins,* C.J., *Ronan, Spalding, Whittemore,* & *Cutter,* JJ., and afterwards was submitted on briefs to all the Justices.

*Morris Michelson, (Lawrence A. Ruttman* with him,) for the plaintiff.

*Philander S. Ratzkoff,* for the defendant American Employers' Insurance Company.

SPALDING, J. Having recovered a judgment against the defendant Pica (hereinafter called the insured), the plaintiff brought this bill in equity to reach and apply the obligation of the defendant insurance company (hereinafter called the company) under the noncompulsory provisions of a motor vehicle policy issued by it to the insured. See G. L. c. 175, § 113; c. 214, § 3 (10). The judge made findings of material facts and ordered the bill dismissed.[1] From a decree entered in accordance with this order, the plaintiff appealed. The case comes here on an agreed record. Rule 4 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 695.

Findings of the judge include the following: On July 2, 1951, the plaintiff brought an action of tort against the insured, alleging that on the night of August 5, 1950, he was struck and injured by an automobile owned and operated by the insured. On July 25, 1951, an appearance for the insured was entered in the case by a firm of attorneys representing the company. On April 24, 1952, the plaintiff's

---

[1] The bill was taken as confessed as against the insured.

attorney sent to the attorneys for the company a notice of a demand to admit facts (under G. L. c. 231, § 69) in the tort action against the insured. This notice was received by the company's attorneys on the same day. On that day (April 24) an attorney of the firm representing the company dictated and signed a letter to the insured which stated that his office, under the insured's policy, was representing him in the tort case; that notice of a demand from the plaintiff to admit facts had been received that day; that the demand required the insured to admit or deny certain facts; and that it was necessary for the insured "to come to this office" so that "the facts can be reviewed" and the answers prepared for his signature. The letter concluded with the following: "Accordingly will you contact me by telephone, and in the event that I am not in the office, contact my secretary who will be glad to arrange an appointment at a time which suits your convenience. The matter must be attended to within ten days of this date so that your prompt coöperation is required."

This letter was never mailed to the insured. Six days later, on April 30, 1952, an employee of the company delivered the letter in person to the insured at his residence in East Weymouth. Before delivery he read the letter to the insured, who replied that he would get "in touch right away." The insured did not go to the office of the company's attorney or get in touch with anyone there before or after ten days from the date of the letter. No reply to the demand to admit facts was ever filed, the facts set forth in the demand were "deemed admitted" under G. L. c. 231, § 69, and the case was tried on that footing. On May 27, 1952, the company's attorneys withdrew their appearance in the case.

It is agreed that the company's attorneys did not communicate with the insured between April 30 (the date of delivery of the letter) and May 27 when they withdrew from the case; nor did they prepare any answers to the demand to admit facts and neither sought nor obtained any extension of time for answering it.

The only relevant provision of the policy here involved is the following: "The insured shall coöperate with the company and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

During the trial, the plaintiff offered certain interrogatories propounded to the company and the answers thereto, which were excluded. In substance the answers to these interrogatories state that the insured submitted a written report of his accident dated August 7, 1950, which was received by the company on August 8, 1950; that he also gave a signed statement of the accident to the company on August 16, 1950; and that he notified the company when the writ was served on him. The insured's signed statement and his written report of the accident were also offered and excluded. The plaintiff's attorney called the insured as a witness and asked him in turn as to each of the facts set forth in the demand to admit facts whether such fact was true. This procedure was repeated when the plaintiff was called as a witness. The judge excluded each such question. The plaintiff duly saved exceptions to these rulings, and made appropriate offers of proof. These offers were to the effect that the excluded evidence would show substantial compliance by the insured with the coöperation clause and that the facts actually existing touching the accident would be the same as those set forth in the demand.

The judge found that the insured, by failing to get in touch with the company's attorneys "after timely notice in hand," did not coöperate "in a vital and immediate matter" pertaining to the defence of the tort case.

The issues on this appeal are two: (1) Whether the insured's conduct amounted to a material breach of the coöperation clause. (2) Whether there was prejudicial error in the exclusion of any of the proffered testimony.

1. Where the obligation which a plaintiff seeks to reach arises out of noncompulsory insurance — and that is the

Imperiali v. Pica.

case here[1] — any defence available to the insurer against
the insured is also available against the plaintiff, for the
plaintiff stands in the shoes of the insured. *Blair* v. *Trav-
elers Ins. Co.* 291 Mass. 432, 436, and cases cited. *Salonen*
v. *Paananen*, 320 Mass. 568, 575. That an insurer may ter-
minate its liability under a policy if the insured commits
a material breach of the coöperation clause contained in it
is well settled. *Goldberg* v. *Preferred Acc. Ins. Co.* 279 Mass.
393. *Goldstein* v. *Bernstein*, 315 Mass. 329. *Williams* v.
*Travelers Ins. Co.* 330 Mass. 476. *Polito* v. *Galluzzo*, 337
Mass. 360. And the insurer need not show that it was
prejudiced by the breach. *Polito* v. *Galluzzo, supra.*

But the "problem of non-cooperation has a dual aspect:
not only what the assured failed to do, but what the insurer
on its part did to secure co-operation from an apathetic, in-
attentive, or vanished policy holder, must be considered."
*Pennsylvania Threshermen & Farmer's Mut. Cas. Ins. Co.* v.
*Owens*, 238 F. 2d 549, 550 (4th Cir.). Although we have
frequently dealt with coöperation clauses, we have not here-
tofore considered the subject with respect to the insurer's
duties under them. This question, however, has received
the attention of courts elsewhere. It has been held, in ac-
cordance with the language quoted above, that an in-
surer cannot be relieved of liability because of an alleged
breach of a coöperation clause by the insured in a situation
where it has not itself exercised diligence and good faith.
*Royal Indem. Co.* v. *Rexford*, 197 F. 2d 83 (5th Cir.). *Com-
mercial Cas. Ins. Co.* v. *Strode*, 202 F. 2d 599 (6th Cir.).
*Duffy* v. *Fort Dearborn Cas. Underwriters*, 270 Ill. App. 143,
149. *Indemnity Ins. Co.* v. *Smith*, 197 Md. 160, 165. *Finkle*
v. *Western Auto. Ins. Co.* 224 Mo. App. 285, 297. *Heim-
becher* v. *Johnson*, 258 Wis. 200, 205. *Modl* v. *National
Farmers Union Property & Cas. Co.* 272 Wis. 650, 657. See
annotation, 60 A. L. R. 2d 1146, 1154. Elementary prin-
ciples of justice and fair dealing require such a rule. The
obligations under a coöperation clause are reciprocal. The

---

[1] The accident, it seems, occurred on a private way.

insured must coöperate; but the insurer is under a duty to exercise diligence and good faith in bringing that about. The demand for coöperation by the insurer must not be unreasonable. There is the additional circumstance in cases of this sort that an attorney undertaking the defence of the case covered by the policy is an attorney for both the insurer and the insured and owes to each a duty of good faith and due diligence in the discharge of his duties. The rights of one cannot be subordinated to those of the other.

Applying the foregoing principles to the case at hand it becomes necessary to determine whether the company exercised reasonable diligence in seeking coöperation from the insured in the matter of the answers to the demand to admit facts. We draw no inference of bad faith on the part of the company or its attorneys. See *Dragone* v. *Dell'Isola*, 332 Mass. 11, 13. The letter of notification to the insured was prepared and signed by the company's attorneys on the same day that notice of the demand to admit facts was received by them. But the letter was not transmitted to the insured until six days later. No explanation for this delay appears. By the time it was delivered to the insured only five days of the reply period remained. The day of delivery was April 30, 1952, and we take judicial notice of the fact that this was a Wednesday, so that two of the statutory ten days were Saturday and Sunday. However, since the last day of the reply period fell on a Sunday, a reply to the demand could have been filed on the following Monday. G. L. c. 4, § 9. Thus the insured had an additional day in which to act. It must also be borne in mind that some part of the ten day period would have been consumed by transmittal even if the letter had been promptly mailed.

The trial judge found specifically that the letter was received by the insured on April 30 and at that time he said that he would get "in touch right away." The insured's residence was located in East Weymouth, which we know to be about fifteen miles from Boston. In the time remaining to him he made no effort to communicate with the company's attorneys. For that matter, the insured did not

communicate with the company's attorneys between the
time he received the letter and May 27, 1952, the date on
which the attorneys withdrew their appearance in the case.
At the trial the insured not only did not complain about re-
ceiving inadequate notice, but made a complete denial of
the entire episode of receiving the letter and having it read
to him.   This the judge found not to be true.   In view of
these facts we think that the conclusion of the trial judge,
that the insured violated the coöperation clause, cannot be
said to be plainly wrong.

2. We turn now to the question whether there was preju-
dicial error in the exclusion of any of the proffered testi-
mony.   The plaintiff argues that all of the excluded evi-
dence was relevant to one or both of two propositions which
would compel findings in his favor.   These propositions are
(a) that the insured coöperated in every particular, except
that of giving answers to the demand to admit facts, by
furnishing a written notification of the accident to the com-
pany promptly, reasonable notice of the service of the writ,
and an exhaustive and accurate written statement to the
company's adjuster;  and (b) that the insured's failure to
coöperate in the giving of answers to the demand to admit
facts was not a material breach since each and every fact
contained in the demand was true and the insured would
have had to admit them;  that the company knew of this
from the notice of accident and the written statement fur-
nished by the insured;  and that the only consequence of
the failure to answer the demand was that the facts con-
tained in it were deemed admitted.

In so far as the proffered evidence supports the first prop-
osition it is irrelevant and was properly excluded.   An in-
sured cannot excuse his failure to furnish ten per cent of
the coöperation requested of him by showing that he had
coöperated as to ninety per cent.   Even if the first proposi-
tion were proved it would not aid the plaintiff's case, since
the company denies liability solely on the ground of the in-
sured's failure to coöperate in answering the demand to
admit facts, and whether such a failure was a material

breach of the coöperation clause was the only issue in the case.

In so far as the excluded evidence is probative of the second proposition (materiality of the breach) it stands on a somewhat different footing. The decision in *Polito* v. *Galluzzo*, 337 Mass. 360, 364–365, holds that the insurer is not required to show that it was prejudiced by the insured's failure to coöperate, but that holding does not preclude an inquiry as to whether the breach was not material. Nevertheless, it was not error to exclude this evidence. This is so because even if all the excluded testimony was admitted and given full credit it would not amount to a showing that the breach was not material. Even if the facts contained in the demand were true and the insured would have had to admit them and the company knew of this from the accident report and the statement of the insured, the company was entitled to the insured's verification of the facts *under oath* at the *time* the notice to admit facts was served. That the only consequence of the failure to answer the demand was that the facts were deemed admitted does not render this breach immaterial. The company was entitled to know whether there were any discrepancies between the earlier unsworn statements and the answers under oath, a matter of considerable importance in the preparation of a case for trial.

The final decree rightly dismissed the bill as against the company. However, it is silent as to the defendant Pica, against whom the bill was taken pro confesso. The decree should be modified by inserting a provision establishing the liability of Pica, and, as so modified, is affirmed, with costs of appeal to the company.

*So ordered.*