Fecteau, Francis R., J.
INTRODUCTION
The Plaintiffs, Jeremy Boijeson (Boijeson) and Michael Capone (Capone), brought suit against Pilgrim for its denial of their claims for personal injury protection (PIP) benefits as provided under G.L.c. 90, §34M and the Massachusetts Automobile Insurance Policy. The matter is before the Court on the motion of the Defendant, Pilgrim Insurance Company (Pilgrim), for summary judgment on the Plaintiffs’ complaint. For the reasons set forth below, the Defendant’s motion is ALLOWED.
BACKGROUND
The undisputed facts viewed in the light most favorable to the non-moving party as established by the summary judgment record are as follows.
This case arises out of a motor vehicle collision that occurred on or about September 14, 2002, at the Holden Car Wash in Holden, Massachusetts. At this place and time, Boijeson was operating a 1989 Toyota Célica (Boijeson vehicle) registered in his wife’s name. Capone was the passenger in the Boijeson vehicle. While the Plaintiffs were going through the car wash, Deborah Wemholm struck the Boijeson vehicle from behind while operating her 1994 Plymouth Grand Voyager.
Following the collision, the Plaintiffs traveled to Maine for previously-scheduled business. When they returned to Massachusetts, the Plaintiffs consulted an attorney and then sought medical treatment. On November 13, 2002, the Plaintiffs’ attorney submitted completed PIP applications to Safety Insurance Company (Safety). Safety, however, was not the insurer of the Boijeson vehicle, Pilgrim was. At some point, the Plaintiffs realized their mistake and submitted their PIP applications to Pilgrim. The Plaintiffs fail to offer an explanation for why they initially sent their PIP applications .to Safety.
Pilgrim received its first notice of the Plaintiffs’ PIP claims on April 29, 2003, seven and one-half months after the accident. At this time, both Plaintiffs had completed their medical treatment.[1] The insurance policy in effect at the time of the collision states that, “you or anyone else covered under this policy must cooperate with us in the investigation . . . [and] [w]e may also require you and any person seeking payment under any part of this policy to submit to an examination under oath.” Massachusetts Automobile Insurance Policy (7th ed.). The policy states that, “Failure to cooperate with us may result in the denial of the claim.” Id. The policy also explains that, “[w]e, or our agent, must be notified promptly of the accident or loss by you or someone on your behalf . . . [i]f you or any person seeking payment under this policy fail to notify us promptly . .. we may not be required to pay claims under [the policy].” Id.
On June 20, 2003, both Plaintiffs submitted to examinations under oath by Pilgrim. The Plaintiffs, upon the advice of their counsel, failed to answer several questions, including two questions regarding any injuries they suffered or accidents they were involved in prior to September 14, 2002. Ultimately, Pilgrim denied the Plaintiffs’ claims for PIP benefits due to the Plaintiffs’ failure to submit to an examination under oath and their failure to provide Pilgrim timely notice of their claims. The Plaintiffs brought suit against Pilgrim in the Leominster District Court and, on May 11, 2005, a judge of that court entered judgment in favor of Pilgrim. The Plaintiffs then exercised their right to a trial de novo in the Superior Court.
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(e); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 *369 Mass. 550, 553 (1976). In deciding a motion for summary judgment, the court views the facts “in the light most favorable to [the non-moving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Mass.RCiv.P. 56(e); see Madsen v. Erwin, 395 Mass. 715, 719 (1985); Godbout v. Cousens, 396 Mass. 254, 261 (1985).
In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Mass.RCiv.P. 56(e); Cmty. Nat’l Bank, 369 Mass. at 553. Summary judgment, where appropriate, maybe entered against the moving party, or may be entered as to certain issues and not others which may present a genuine issue of material fact. Cmty. Nat’l Bank, 369 Mass. at 553. The non-moving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
The essence of the Plaintiffs’ claims is that the Defendant breached the insurance contract and violated G.L.c. 90, §34M and G.L.c. 93A by refusing to pay the Plaintiffs PIP benefits. The Defendant argues that it is entitled to summary judgment because it lawfully disclaimed liability because the Plaintiffs substantially and materially breached the insurance policy on two independent grounds: First, the Plaintiffs failed to respond to pertinent questions during an examination under oath; and second, the Plaintiffs failed to give Pilgrim prompt notice of their PIP claims, which resulted in the prejudice of Pilgrim’s interests. The Defendant is discharged from liability and entitled to summary judgment if no genuine issue of material fact exists with respect to either of the grounds asserted.
1. Plaintiffs’ Failure to Answer Questions During the Examination Under Oath
The Defendant contends that it is entitled to summary judgment because the Plaintiffs breached the insurance policy by failing to answer certain questions broadly relating to past injuries and/or accidents during the examination under oath. The duty to cooperate and submit to an examination under oath is a condition precedent to enforcement of the insurance contract. Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 337 (1995). “[A] wilful, unexcused refusal to submit to an examination under oath, without proof of actual prejudice to the insurer’s interests resulting from the refusal, constitutes a material breach of the insurance contract discharging the insurer’s liability under the contract.” Lorenzo-Martinez v. Safety Ins. Co., 58 Mass.App.Ct. 359, 363 (2003). An insurer may disclaim liabiliiy when the failure of the insured to cooperate rises to the level of a “substantial and material” breach of that duty. Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 638 (1996) (quoting Darcy v. Hartford Ins. Co., 407 Mass. 481, 488 (1990)). The moving party has the burden of showing that there is no genuine issue of material fact that the insured’s noncooperation at the examination under oath constituted a substantial and material breach of the insurance policy.
Massachusetts courts have considered whether the insured’s failure to cooperate with an insurer’s request for an examination under oath constitutes a substantial and material breach of the insurance contract.[2] In Lorenzo-Martinez v. Safety Insurance Co., the Appeals Court of Massachusetts examined whether the insured forfeited his right to coverage because he refused to submit to an examination under oath in violation of the insurance policy. Lorenzo-Martinez, 58 Mass.App.Ct. at 360. The court held that the insured’s failure to submit to an examination was a substantial and material breach of the insurance contract because he willfully and unexcusably refused to attend despite the insurer’s multiple attempts to secure his cooperation. Id. at 365.
The present case is distinguishable from Lorenzo-Martinez because here, the insureds did attend and substantially comply with the examination under oath. Pilgrim argues that the Plaintiffs failed to answer at least two pertinent questions regarding prior accidents and injuries. While it is reasonable for Pilgrim to inquire into the relationship between the Plaintiffs’ injuries and the accident, the Plaintiffs’ failure to answer these questions does not rise to the level of a substantial and material breach of the insurance policy as a matter of law. Unlike other cases where the insureds have refused to either attend the examination or answer a substantial amount of pertinent questions,[3] here, both Plaintiffs presented to the examination and provided ample testimony about the accident. Moreover, the record indicates that Pilgrim made no attempt to obtain the information it sought by asking more specific follow-up questions. Therefore, the Defendant’s motion for summary judgment is denied on this ground because a question of fact *370 exists as to whether the Plaintiffs’ failure to answer questions at the examination under oath constituted a substantial and material breach of the insurance policy.[4]
2. Plaintiffs’ Failure to Provide Pilgrim with Prompt Notice of Their Claims
The Defendant asserts that it is entitled to summary judgment because the Plaintiffs’ failure to notify Pilgrim promptly of their claims prejudiced Pilgrim’s interests. Pursuant to G.L.c. 90, §34M and the Massachusetts Automobile Insurance Policy, the insured is required to submit a PIP claim “as soon as practicable . . . and in every case within at least two years from the date of the accident.” G.L.c. 90, §34M; see Massachusetts Automobile Insurance Policy 30 (7th ed.). The insurer has a contractual right to “determine promptly — while the evidence and memories are still fresh — the validity of any loss for which it might become liable.” Mello, 421 Mass. at 341; see Segal v. Aetna Cas. & Sur. Co., 337 Mass. 185, 188-89 (1958). An insurance company may deny coverage for the “insured’s failure to notify the company seasonably of an occurrence that might give rise to liability” if the insurance company can demonstrate that the delay prejudiced its interests. Goodman v. Am. Cas. Co., 419 Mass. 138, 141 (1994). The burden of proving that the insured gave notice as soon as practicable falls on the insured. Segal, 337 Mass. at 187. What constitutes a reasonable period of time is usually a question of fact, but where the basic facts are undisputed, whether there has been reasonably prompt notice can become a question of law. Segal, 337 Mass. at 188.
Massachusetts courts have declared that in cases where the insured fails to notify the insurer seasonably the insurer may only disclaim liability if it can show prejudice.[5] In Darcy v. Hartford Insurance Co., the Supreme Judicial Court of Massachusetts considered whether an insurance company could discharge liability because the insured’s late notice prejudiced the insurer’s interests. Darcy v. Hartford Ins. Co., 407 Mass. 481, 485 (1990). The Court listed several factors to consider in determining whether an insurer has suffered actual prejudice including, the length of delay, loss of critical evidence, the loss of testimony from a material witness, or some other facts that show that the delay has actually harmed the insurer’s interests. Id. at 486. The Court held that the insurer had not demonstrated that the late notice placed it in a substantially less-favorable position than it would have been in had it received timely notice. Id. at 487. The Court reasoned that not only did the facts indicate that the insurer possibly had notice from outside sources, but after the insured gave notice the insurer made no meaningful attempt to investigate the accident so any prejudice it suffered was due to its own inaction. Id. at 487, 487 n.5.
The present case is distinguishable from Darcy because the Defendant did not have actual notice until seven months after the accident and, despite a meaningful investigation, was prejudiced because it lost the opportunity to conduct an independent medical examination. Pilgrim received its first notice of the accident and the Plaintiffs’ claims on April 29, 2003, after both Plaintiffs had reached a medical end. Based on the discrepancy between the varying descriptions of the accident and the injuries the Plaintiffs claimed, it was reasonable for Pilgrim to require an independent medical examination as part of its investigation and while the Plaintiffs’ complaints of injuries and treatment were still active.[6] The delay in notice, however, deprived Pilgrim of the opportunity to perform this critical step in its investigation. An insurer is not required to pay medical bills merely on the unsubstantiated claims of the insured that they represent reasonable and necessary treatment for injuries caused by the accident. Brito v. Liberty Mut. Ins. Co., 44 Mass.App.Ct. 34, 37 (1997). The loss of the timely opportunity to evaluate the Plaintiffs’ claims or injuries and to determine whether the Plaintiffs’ treatment was reasonable or necessary, which is directly related to the amount of benefits Pilgrim would be liable for, substantially prejudiced Pilgrim’s interests.
Courts have also considered the legal effect of late notice despite the insured’s good faith. In Eastern Products Corp. v. Continental Casualty Co., the court examined whether the insured’s good faith failure to give timely notice to the insurance company prejudiced the company and warranted denial of the claim. Eastern Prods. Corp. v. Cont’l Cas. Co., 58 Mass.App.Ct. 16, 22 (2003). In Eastern Products Corp., the insureds argued that their late notice should be excused because the reason they did not notify Continental Casualty Company (Continental) of their claims was because they did not actually know, or have reason to know, of the existence of liability for the property’s contamination. Id. The Court held that despite the fact that the insureds had a good faith belief that no liability existed, their failure to report the “occurrence of an accident at the time it occurs (irrespective of any good faith belief as to the existence of any liability or injury)” denies the insurer of “the opportunity to investigate the cause and nature of a claim or occurrence while the facts are still fresh in the minds of the parties and while the physical evidence of the occurrence is still fresh.” Id. The court noted that the insureds were aware, or upon reasonable inquiry, should have been aware that the existence of contamination on the property could potentially result in a claim against them. Id. at 23. Therefore, the court held that because the delay actually prejudiced Continental, it was “irrelevant” that the insureds believed in good faith that the contamination did not pose a threat to public health. Id.
The present case is analogous to Eastern Products Corp. where Continental validly denied the insureds’ late claims despite their good faith, because here the Plaintiffs also claim to have made a good faith mistake *371 that resulted in a delay in notification. The Plaintiffs claim that the fact that they initially submitted their PIP applications to the wrong insurance carrier and did not notify Pilgrim until over seven months after the accident was the result of an “honest mistake.” Even assuming the truth of this assertion, the Plaintiffs, upon reasonable inquiry, should have been able to identify the correct insurance carrier for the vehicle of the wife of one of the Plaintiffs (Borjeson). Moreover, whether or not the Plaintiffs acted in good faith is irrelevant if their mistake actually prejudiced Pilgrim’s interests and placed it in a substantially less-favorable position. The fact that the Plaintiffs’ attorney was unable to correctly identify the insurance company for his client’s wife’s vehicle until over seven months after the accident and after both Plaintiffs had reached a medical end placed Pilgrim in a substantially less-favorable position. Plaintiffs’ late notice, therefore, actually prejudiced Pilgrim’s interests because Pilgrim was deprived of the essential opportunity to conduct an independent examination of the Plaintiffs’ injuries.[7]
Courts have also examined what length of time is considered “as soon as practicable” under G.L.c. 90, §34M and the Massachusetts Automobile Insurance Policy. In Depot Cafe, Inc. v. Century Indemnity Co., the Court looked at whether the plaintiffs delay of approximately forty-six days was a breach of the insurance policy as a matter of law. Depot Cafe, Inc. v. Century Indem. Co., 321 Mass. 220, 223 (1947). The Court reasoned that a jury would have been obligated to find that for a period of forty-six days the plaintiff did not notify the insurance company of the accident and that there were no extenuating circumstances connected to this failure to notify. Id. at 224-25. In Royal-Globe Insurance Co. v. Craven, the Court considered whether the insured gave notice to Royal-Globe Insurance Company as soon as practicable. Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 633-34, 634 n.7 (1992). In Royal-Globe, the insured was involved in a hit-and-run accident and was disabled in the hospital for twenty-three days. Id. at 630-31. The Court held that regardless of when the disability was removed, the insured did not give notice to Royal-Globe without delay or hesitation. Id. at 634. Notwithstanding the insured’s disability, giving Royal-Globe notice more than three months after the insured was released from the hospital was not reasonably prompt under the circumstances. Id. at 634 n.7.
Similar to Depot Cafe, Inc., where the Court held that the insured breached the insurance policy because there were no extenuating circumstances to justify the insured’s failure to notify the insurance company until forty-six days after the accident, the facts in the present case do not justify the Plaintiffs’ seven-month delay in notifying Pilgrim, the insurer of the Borjeson vehicle. Also analogous to Royal-Globe, where the Court determined that the insured’s notification was not reasonably prompt under the circumstances, here it is unreasonable that Plaintiffs’ unilateral mistake should afford them a seven-month grace period to provide notice at Pilgrim’s expense. It cannot be said that a period of over seven months is a reasonably prompt notification period for Plaintiffs, or their attorney, to correctly identify the insurer of Boijeson’s wife’s vehicle. Pilgrim, therefore, was prejudiced because the Plaintiffs did not notify Pilgrim as soon as practicable as a matter of law. Accordingly, the Defendant is entitled to summary judgment on the Plaintiffs’ claims.
ORDER
For all of the foregoing reasons, it is ORDERED that the motion of the Defendant, Pilgrim Insurance Company, for summary judgment is ALLOWED and judgment shall enter in favor of the Defendant on all counts.

 Plaintiff Borjeson completed medical treatment on March 20, 2003. Pl.’s Admis. ¶8 (March 8, 2004). Plaintiff Capone completed medical treatment in April of 2003. Pl.’s Admis. ¶7 (March 8, 2004).

 See generally Mello v. Hingham Mut Fire Ins. Co., 421 Mass. 333 (1995); Lorenzo-Martinez v. Safety Ins. Co., 58 Mass.App.Ct. 359 (2003); Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630 (1996).

 See Mello v. Hingham Mut Fire Ins. Co., 421 Mass. 333, 337, 340-41 (1995) (holding plaintiffs refusal to attend an examination under oath based on his privilege of self-incrimination materially breached the insurance policy); Lorenzo-Martinez v. Safety Ins. Co., 58 Mass.App.Ct. 359, 361, 363-64 (2003) (determining plaintiff breached the insurance contract when he refused to attend an examination despite the insurer’s repeated requests for his cooperation); Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 638-39 (1996) (deciding the plaintiff breached the insurance contract when she failed to appear at three scheduled examinations under oath).

 Pilgrim relies on Commerce Ins. Co. v. Fiores to support its contention that Plaintiffs’ attorney’s advice to his clients that they did not have to answer specific questions during the examination amounted to a failure to submit to the examination. In Fiores, the insureds’ attorney placed broad restrictions on the questions the plaintiffs examiner would be permitted to ask and did not permit his client to answer several questions concerning the happening of the accident during the examination. Commerce Ins. Co. v. Flores, Civil No. 00842 at 4-5 (Worcester Super.Ct. March 30, 2000) (Fecteau, J.) (11 Mass. L. Rptr. 587). The insureds’ attorney also terminated the examination of one client because Commerce Insurance Company would not agree to accept liability if his client participated in the examination. Id. at 5. The present case is distinguishable because the Plaintiffs’ attorney did not prevent his clients from answering any questions related to the happening of the accident or attempt to broadly restrict the examiner’s questioning. Moreover, the Plaintiffs voluntarily participated in the examination and did not seek to condition their participation on Pilgrim’s acceptance of liability-

 See Goodman v. Am. Cas. Co., 419 Mass. 138, 141 (1994) (concluding that an insurer must prove that it was prejudiced by the insured’s untimely notice in order to disclaim liability); Darcy v. Hartford Ins. Co., 407 Mass. 481, 485 (1990) (stating it is not enough that the insurer show late notice; the insurer must also demonstrate that its interests were prejudiced as a result of the late notice); Eastern Prods. Corp. v. Cont’l Cas. Co., 58 Mass.App.Ct. 16, 23-24 (2003) (holding defendant insurance company satisfied its burden by demonstrating *372 that it was prejudiced by the plaintiffs’ late notice of their claims).

 Compare Depo. Deborah Wemholm 20:20-20:23 (Feb. 11, 2004) (describing collision as a “tap”), with Depo. Jeremy Boijeson 33:11-34:16 (June 20, 2003) (describing impact as one that caused the Boijeson vehicle to be knocked out of the carwash), and Depo. Michael Capone 37:18-38:18 (June 20, 2003) (describing the impact as one that caused the car to shoot forward), and Depo. Jeremy Boijeson 50:3-50:5 (June 20, 2003) (approximating treatment period as lasting from November until March or April), and Michael Capone 62:24-63:3 (June 20, 2003) (estimating length of treatment for injuries as three to four months).

 The Plaintiffs point to Williams v. Travelers Insurance Co., arguing that an “honest mistake” does not constitute a breach of the cooperation clause. Williams v. Travelers Insurance Company, 330 Mass. 476, 479 (1953). In Williams, the Court held that the insurer could disclaim liability because the insureds gave false testimony about a material issue in the defense of a tort action against Travelers Insurance Company. Id. at 476-77. The Court explained that the insured must be truthful and act in good faith when communicating with the insurer and that misstatements about trivial matters or an honest mistake would not be a breach of the cooperation clause. Id. at 479. The Plaintiffs’ reliance on Williams, however, is inapposite because Williams dealt with “honest mistake[s]” regarding trivial matters or minor discrepancies that typically occur when you have multiple statements from witnesses. Id. In the instant case, the mistake was substantial, material, and it prejudiced Pilgrim’s interests. Therefore, notwithstanding Plaintiffs’ good faith, if their substantial and material mistake actually prejudiced Pilgrim’s interests than Pilgrim may avoid liability.