Swan, J.
According to the complaint, Vladymir Belizaire (“Belizaire”) “was an occupant of a motor vehicle that was involved in an accident in Massachusetts or was a pedestrian struck by a motor vehicle in Massachusetts.” But whether he was in the vehicle or out, the complaint alleges that the vehicle was insured by Commerce Insurance Company (“Commerce”), which issued a policy providing statutory personal injury protection (“PIP”) benefits under G.L.c. 90, §34A. Lynn Physical Therapy, Inc. (“Lynn PT’) treated the alleged occupant or pedestrian, and filed a PIP claim with Commerce for payment of its services. Commerce ultimately denied the claim based on the alleged noncooperation of Lynn PTs patient. Lynn PT brought this suit against Commerce, alleging violations of G.L.c. 90, §34M and G.L.c. 93A, §11. Commerce moved, successfully, for summary judgment on its noncooperation defense. Lynn PT has appealed.
We view the facts in the light most favorable to Lynn PT, the party opposing summary judgment. Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). Commerce insured a car owned by Franklin Quezada (“Quezada”). On June 14, 2008, the car was struck in the rear by a motorcycle. Belizaire was alleged to have been a passenger in the car.[1] Three days later, an attorney, Mark Horrigan (“Horrigan”), notified Commerce that he represented Belizaire and that Belizaire had been injured in an accident. Horrigan followed up with a letter of representation dated the same day, June 17, 2008. The letter enclosed only the first two pages of a three-page operator’s report. On June 20, 2008, Commerce contacted Horrigan’s office about the accident, but could get no details about either the accident, or Belizaire’s injuries. Within a week, however, Commerce received a Peabody police report stating that Belizaire had been in the car, but had not been injured. On July 20, 2008, Commerce received the operator’s report. It was dated June 19, 2008. Commerce wondered how this report, dated June 19, had found its way into *108 Horrigan’s letter of June 17. Suspecting fraud at that point, Commerce sent Horrigan a reservation of rights letter and commenced an investigation.
The policy required that “anyone covered” under it “must cooperate” with Commerce and that “any person seeking payment under any part of this policy [must] submit to an examination under oath at a place designated by [Commerce], within a reasonable time after” notification of the claim, and that failure to cooperate could result in denial of the claim. Commerce’s investigator agreed with Horrigan to take a recorded statement from Belizaire at Horrigan’s office on August 14, 2008. Belizaire failed to appear. Commerce left a message with Horrigan’s office on August 19 to reschedule the meeting, and on August 22, sent a letter to Horrigan, reminding him of Belizaire’s duty to cooperate. On September 3, 2008, Commerce received a letter of representation of Belizaire from another attorney, Jeffrey Glassman (“Glassman”), and sent another reservation of rights letter to Glassman.
In the meantime, Commerce received a crash report on the motorcycle that was involved in the accident. It stated that the front fender of the motorcycle had “rubbed” the rear bumper of Quezada’s car and that the contact was “insufficient to transfer any appreciable force.”
On October 8, 2008, because of Belizaire’s failure to appear for an interview and the conflicting information it had received, Commerce referred the matter to its attorney, David D’Eramo (“D’Eramo”) to schedule an examination under oath (“EUO”) of Belizaire.[2] D’Eramo mailed a letter to Glassman on October 16, scheduling the EUO on October 27, 2008 at 10:00 AM. D’Eramo’s assistant received a call from a third attorney, Susan Fiore (“Fiore”),[3] requesting a continuance of the EUO to 3:00 PM on November 18, 2008. D’Eramo agreed and sent a confirmatory letter. On the date and time set, Fiore appeared at D’Eramo’s office, but Belizaire did not. On December 4, 2008, D’Eramo sent a letter to Fiore, scheduling another EUO for December 18 at 2:00 PM. Belizaire did not appear. D’Eramo received no further requests from Fiore to reschedule another EUO. Belizaire also failed to produce any documents that D’Eramo had requested regarding the accident and his medical treatment. On December 30, 2008, Commerce sent Glassman a letter denying Belizaire’s PIP claim. As an unpaid party for the services it claims to have provided to Belizaire under G.L.c. 90, §34M, Lynn PT commenced this action.[4]
Lynn PT presented no affidavits “made on personal knowledge” as required by Mass. R. Civ. R, Rule 56(e) to dispute the facts of Belizaire’s failure to cooperate. Rather, it maintains that summary judgment should not have been allowed because Commerce never acknowledged that it had issued an insurance policy for Quezada’s car. Lynn PT bases its claim on two pleadings filed by Commerce at the beginning *109 of the litigation. The first was Commerce’s answer, dated February 9, 2010. Paragraph 3 of Lynn PTs complaint, stated:
On or about June 14, 2008, "Vladymir Belizaire was an occupant of a motor vehicle that was involved in an accident in Massachusetts or was a pedestrian struck by a motor vehicle in Massachusetts. The said vehicle was insured by the defendant [Commerce] by a Massachusetts Automobile Insurance Policy which provided Personal Injury Protection (PIP) benefits mandated by G.L.c. 90, §34A, viz., benefits for payment of all reasonable expenses incurred for necessary medical treatment within two years of accident to a limit of $8,000.00 per person. Vladymir Belizaire is hereinafter referred to as the defendant’s insured.
To that averment, Commerce answered, “Denied.” Since Commerce later based its motion for summary judgment on a violation by Belizaire of the conditions of the insurance policy, Lynn PT argues, it was required to parse that portion of the averment out and admit the policy’s existence, in conformity with the mandate of Mass. R. Civ. R, Rule 8(b) that “[w]hen a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder.” Relying on G.L.c. 231, §87, which provides that “pleadings shall not be evidence on the trial, but the allegations therein shall bind the party,” Lynn PT interprets the answer as an allegation by Commerce that there was no policy, and argues that Commerce could not, therefore, rely in its motion for summary judgment on a policy that it alleged did not exist.
Lynn PT misreads the import of the denial of paragraph 3 of its complaint. The denied paragraph presented a unified concept: Belizaire was Commerce’s insured entitled to benefits in the June 14 accident. Indeed, the paragraph itself contained an unusual uncertainty whether its own patient had been injured as an occupant of the car or as a pedestrian. Since Lynn PT would undoubtedly have obtained a history from its patient as to how his injuries had occurred, the display of such uncertainty as late as the point of commencing an action, added to the suspect date in the operator’s report and the manner of its presentation, the police report indicating no injury to Belizaire, the crash report indicating no “appreciable force” to the car, and the utter failure of Belizaire to provide any information to Commerce and its attorney, reasonably elicited a denial of the entire averment.
Similarly, Commerce denied request no. 1 of Lynn PTs request for admissions of fact, served with the complaint, which stated: “On June 14,2008, Vladymir Belizaire was in an accident within Massachusetts while an occupant of a motor vehicle insured by the Defendant under a Massachusetts Automobile Insurance Policy.” Lynn PT argues that this denial was also an allegation of the nonexistence of the policy, citing the requirement of Mass. R. Civ. R, Rule 36(a) that a “denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder.” But this request for admission also presented a single concept: that Belizaire was in a car insured by Commerce.
To remove any doubt that Commerce would rely on the existence of a policy *110 under which Lynn PT, as an assignee of Belizaire’s claim, was proceeding, Commerce utilized acceptable alternative pleading and asserted in its answer both the failure to attend an EUO and noncooperation generally as affirmative defenses under the “applicable policy.”[5] “Modern rules of pleading permit alternative pleading.” Matter of Hilson, 448 Mass. 603, 613 (2007).
Later in the litigation, on August 31, 2010, presumably after more discovery, the insurance policy that was the basis of Lynn PTs claim was identified by Commerce in an answer to interrogatories.[6] This answer constituted an evidentiary admission by Commerce that the policy existed. General Elec. Co. v. Board of Assessors of Lynn, 393 Mass. 591, 603 (1984). Had Lynn PT found fault with Commerce’s earlier answer or response to admissions, its remedy was not to raise the issue in opposition to summary judgment after the evidentiary admission regarding the policy had been made, but to seek remedies under Mass. R. Civ. R, Rule 12(f) (motion to strike pleading), or Rule 36(a) (motion to determine sufficiency of answers to requests for admissions). Notably, Lynn PT took no such steps.[7] With the policy established, Commerce properly presented its case supporting the defenses of noncooperation generally and failure to attend an EUO at Commerce’s request pursuant to the obli *111 gations of an injured party under the policy.
Even without the terms of the policy before the motion judge, the obligation of the injured party to cooperate with the insurer in a PIP claim is mandated by statute. “Noncooperation of an injured party shall be a defense to the insurer in any suit for benefits authorized by this section and failure of an insurer to pay benefits in the event of such noncooperation shall not in any way affect the exemption from tort liability granted herein.” G.L.c. 90, §34M. An intentional or unexcused failure to attend an EUO constitutes noncooperation. Morales v. Pilgrim Ins. Co., 58 Mass. App. Ct. 722, 724 (2003); Knight v. CNA Ins. Co., 2003 Mass. App. Div. 198, 200.
As noted, there is no other dispute as to the facts recited. Commerce filed its motion for summary judgment after answering the interrogatories, in which it acknowledged the existence of the policy. Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P, Rule 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). As noted, we have viewed the evidence in the light most favorable to Lynn PT. While represented by counsel, Belizaire consistently failed to cooperate either by appearing for an interview with Commerce’s investigator or for an EUO. See Hodnett v. Arbella Mut. Ins. Co., 1996 Mass. App. Div. 131, 133-134. There is no suggestion of any delay by Commerce in seeking an EUO, see Knight, supra at 202-203, or inadequate notice of the EUO to Belizaire. See Barron Chiropractic & Rehabilitation, P.C. v. Premier Ins. Co. of Mass., 2009 Mass. App. Div. 1, 3-4. The party moving for summary judgment bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Commerce met its burden. The defense of noncooperation was clearly established, and summary judgment was properly allowed.
Judgment affirmed.
So ordered.

 Apparently, by the motion stage of the proceedings, it was established that Belizaire was more in the car than out of it.

 “A statement or examination under oath is an examination conducted by the insurer of the insured who is placed under oath and whose answers are transcribed by a stenographer. 13 COUCH, INSURANCE §§196.6-196.13.” Lorenzo-Martinez v. Safety Ins. Co., 58 Mass. App. Ct. 359, 365 n.5 (2003).

 Fiore was in Glassman’s office, but the record is silent as to whether, or how, either attorney was associated with Horrigan.

 The record contains no correspondence between the parties and no records or billing from Lynn PT.

 The affirmative defenses stated:
The Plaintiff [Lynn PT] is not entitled to recover under the applicable policy of insurance as the patient whose medical billing is at issue in the Plaintiff’s statement of the case failed and/or refused to appear for a properly scheduled examination under oath and thereby is in breach of said policy.
The Plaintiff is not entitled to recover under the applicable policy of insurance as the patient whose medical billing is at issue in the Plaintiffs Statement of the Case failed to cooperate with the Defendant and thereby is in breach of said policy.”

 Lynn PFs interrogatory no. 1 asked:
Was the defendant the automobile insurance carrier providing Personal Injury Protection coverage under a Massachusetts Automobile Insurance Policy for the injured person with regard to the accident alleged in the Complaint?
Commerce answered:
Without conceding that the terms and conditions of the applicable policy required Commerce Insurance Company to compensate the injured person/patient Vladimir [sic] Belizaire, The Commerce Insurance Company was the carrier whose policy provided Personal Injury Protection Coverage under Massachusetts Automobile Insurance Policy against which the Plaintiff has made a clam.

 At oral argument, Lynn PT suggested that Commerce should unilaterally have amended its answer. Lynn PT has cited no authority for such a requirement.